# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE ESTATE OF ISABELLA "BELLA" HERNDON, JOHN HERNDON, J.H., a minor, AND T.H., a minor,<br><br>*Plaintiff-Appellants*,<br><br>v.<br><br>NETFLIX, INC.,<br><br>*Defendant-Appellee*. | Civil Appeal No. 22-15260 |

## MOTION FOR EXTENSION OF TIME TO FILE
## APPELLANTS' OPENING BRIEF & EXCERPTS OF RECORD

Pursuant to Federal Rules of Appellate Procedure 2, 26, and 27, and to Ninth Circuit Rule 31-2.2, Plaintiff-Appellants the Estate of Isabella "Bella" Herndon, John Herndon, J.H., a minor, and T.H., a minor, hereby respectfully request and move for a 30-day extension of time to file their Opening Appellate Brief and Excerpts of Record, up to and including, **October 19, 2022**, for the reasons that follow.

This is a wrongful-death and survivor action that arose out of the death of a 15-year-old girl. The Plaintiff-Appellants are her surviving father and brothers. Their appeal was docketed in late February, 9th Cir. Dkt. 1-1 (Time Schedule Order), and then entered the Ninth Circuit's Mediation Program shortly thereafter, 9th Cir. Dkt. 5 (Mediation Assessment Order). Then, six months later and just four days ago, on September 15, 2022, this appeal left mediation. 9th Cir. Dkt. 14.

1

There are *five* key reasons that justify an extension of time to brief this appeal that are summarized here and then discussed in further detail below and in the supporting declaration:

(1) **Released From Mediation Four Days Ago**: This appeal was just released from the Ninth Circuit's Mediation Program four days ago, on September 15, 2022.

(2) **Lead Counsel's Pre-Planned Honeymoon**: Lead appellate counsel had a pre-planned, three-week Honeymoon with his wife that coincided with the recent briefing period.

(3) **Recently Enacted Relevant Legislation**: The State of California recently, *i.e.*, on September 13 and 15, 2022, enacted watershed legislation that may have major bearing upon this appeal.

(4) **Recent Change in Team Composition**: Below there were six attorneys working on this case, but only three will be available to meaningfully work on the Opening Brief.

(5) **Recent Unexpected Demands on Team**: The remaining three counsel have faced significant, unexpected, time-sensitive demands over the past 30 days, including extraordinary demands in the last seven days.

These five reasons for an extension are discussed in further detail below and in the supporting declaration.

\* \* \* \* \*

**First**, this appeal was released from the Ninth Circuit's Mediation Program four days ago, on September 15, 2022, and this Motion is the first extension request since release from mediation.

This appeal was docketed on February 23, 2022. 9th Cir. Dkt. 1-1 (Time-Scheduled Order). Both sides responded to the Circuit Mediation Questionnaire. 9th Cir. Dkt. 2 (Appellee's Mediation Questionnaire), 9th Cir. Dkt. 4 (Appellant's Mediation Questionnaire). Then, the case entered mediation under the auspices of the Circuit Mediation Program on March 14, 2022. 9th Cir. Dkt. 5 (Mediation Assessment Order). This case stayed in mediation until four days ago, September 15, 2022. 9th Cir. Dkt. 15 (Mediation Release Order).

Thus, although this case has been docketed for months, the actual timeframe for briefing has been quite short, as briefing ordinarily only meaningfully proceeds after mediation ends. In short, the timeframe of the release from mediation left just four days to work on the Opening Appellate Brief and Excerpts of Record after release from mediation.

The purpose of mediation is "to facilitate the voluntary resolution of cases." 9th Cir. R. 33-1(a). In turn, a major reason that parties settle in mediation is to avoid the costs and fees associated with an appeal. Working on a brief during mediation, therefore, reduces the possibilities for mediated resolution.

Indeed, briefing during a mediation process is counterproductive because mediated resolution often depends upon avoidance of the costs of further litigation. E.g., E.M. v. Millville Bd. of Educ., 849 F. Supp. 312, 316 (D.N.J. 1994) ("purpose of mediation" to "avoid legal counsel […] costs"). So, it is actively counterproductive to the mediation process to conduct major briefing—and incur the attendant costs—while a case in mediation.

In other contexts, this Court has expressly indicated that a party should not be punished—or suffer litigation disadvantage—for its willingness to participate in extensive or lengthy mediation. It's even equitably tolled a statute of limitations in certain circumstances. See Herrera v. Command Sec. Corp., 837 F.3d 979, 986 (9th Cir. 2016) (equitably tolling statute of limitations and noting that a party willing to engage in union-related mediation "should not be punished" for delays associated with attempted mediation).

In sum, mediation here was six months—from mid-March to mid-September. After the case was released from mediation, there remained just four days to brief and this is the first extension request sought after the case left mediation. These reasons strongly counsel in favor of an extension.

**Second**, lead appellate counsel had a pre-planned, three-week Honeymoon with his wife.

As this Court has noted, "attorneys, like everyone else, have critical personal and familial obligations." Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1259 (9th Cir. 2010). One such critical personal and familial obligation is at issue in this extension request.

Here, lead appellate counsel was on his pre-planned Honeymoon for three weeks in the most recent period of this case. Lead appellate counsel's Honeymoon has had major effects on the team. Naturally, lead counsel's time with his wife on his Honeymoon meant that he was away from attending to the practice of law, including away from attending to this case (and hadn't begun briefing as the matter was in mediation).

Moreover, lead appellate counsel practices law at a small nonprofit law firm, the DIGITAL JUSTICE FOUNDATION. There are only two attorneys full-time (including lead counsel) and one attorney part-time. The absence for three weeks of a full-time attorney—indeed, the lead attorney at the organization—meant that, during his absence, his substantial obligations accrued to the remaining attorneys, well beyond their ordinary responsibilities.

An extension request is also appropriate here because of lead appellate counsel's Honeymoon. Indeed, it is "important to the health of the legal profession that attorneys strike a balance between these competing [personal and professional] demands on their time." Ahanchian, 624 F.3d at 1259.

5

**Third**, the claims at issue in the appeal arise under California law and the State of California recently—just under a week ago—enacted watershed legislation that may have major bearing upon this appeal.

Within the last week—once on Tuesday, September 13, 2022, and then again on Thursday, September 15, 2022—the State of California enacted major pieces of legislation that may have bearing on this appeal. Time to study, consider, and weigh the effect of the legislation would allow counsel to ensure that the Court is properly apprised of the state of the law.

The centerpiece enactment is the [California's AB2273](), named the **California Age-Appropriate Design Code Act**. It was enacted on September 15, 2022—the same day the appeal left mediation. This new law may have major significance to this appeal because this appeal is about the extraordinarily harm inflicted upon a 15-year-old girl online by a large business. In turn, the California Legislature has made the following findings:

> (a) Businesses that develop and provide online services, products, or features that children are likely to access should consider the best interests of children when designing, developing, and providing that online service, product, or feature.
>
> (b) If a conflict arises between commercial interests and the best interests of children, companies should prioritize the privacy, safety, and well-being of children over commercial interests.

AB2273 § 1798.99.29.

Notably, a child is defined as a "consumer" who is "under 18 years of age." AB2273 § 1798.99.30(b)(1). The decedent here likely counts.

There's another law, California's AB587, enacted September 13, 2022, with a key chapter entitled the "**Content Moderation Requirements for Internet Terms of Service**[.]" AB587 Ch. 22.8. Although it's not clear that this law is directly applicable—and it may not be given its definition of social media providers—this new law interplays with several the central arguments on appeal in this case that will be before the Court.

Additional time to research and assess the impact of these laws in depth—laws that were signed into law under a week before the current deadline for the Opening Appellate Brief—would be appropriate to fully apprise the Court of California's laws. Cf. Cooper v. Principi, 2004 U.S. App. Vet. Claims LEXIS 36, *1 (Ct. App. Veteran Claims 2004) (One basis for granting additional time is "to research the impact of new legislation that has been enacted which may affect the disposition of this matter." (internal quotes, brackets, ellipses omitted)).

In sum, there are two very recent enactments from the State of California. One likely has very significant implications for this appeal and one is at least topically relevant. Counsel need additional time—and it may be substantial time—to digest what appears to be comprehensive new laws.

7

These freshly enacted laws—enacted four days and six days ago, respectively—are significant. And, their enactment militates in favor of granting counsel time to study them, which may take significant investments of counsel time. These new laws supply additional reasons to grant the requested extension here.

**Fourth**, there has been a change in the team composition for the appeal. It's a smaller team. Below there were six attorneys working on this case, but only three will be available to meaningfully work on the Opening Brief.

Below there were six attorneys—three from a small nonprofit, one from an even smaller nonprofit, one solo practitioner, and one attorney who runs a two-attorney firm. The solo practitioner has transferred firms to a larger firm where his time commitments and obligations have significantly reduced the amount of time he can spend on this case in any manner. The attorney at the smaller nonprofit has also had a growing number of matters that have severely limited her ability to participate in this appeal. Finally, one of the other nonprofit's attorneys is part-time and the nonprofit cannot commit him to substantial participation in the Opening Brief.

That leaves just three attorneys who can meaningfully provide services on the Opening Brief.

In other words, the litigation team has been chopped in half. As a result, the remaining team needs additional time to prosecute this appeal and thoroughly brief this Court on the law.

**Fifth**, the remaining three counsel have faced significant, unexpected, time-sensitive demands over the past 30 days, including extraordinary, time-sensitive demands in the last seven days.

As noted, lead appellate counsel was on his Honeymoon with his wife for three weeks. Then, he came back to extraordinary demands, including a time-sensitive filing for a client due on September 13, 2022, that required all-nighters upon return from his Honeymoon to learn an entirely new area of law to protect one of his clients from ruination.

Similarly, the other attorney at the nonprofit was researching and learning a new area of law (bankruptcy) on an emergency basis while simultaneously trying to manage and prosecute a number of other appellate briefs and filings.

The third remaining counsel also had significant demands. He had a trial that took place on September 9, 2022. The trial itself was time-consuming as were briefing motions in limine and post-trial briefing. In addition, he runs a small firm with only two attorneys. His law partner was out of the country for two weeks on a vacation.

It is usually her responsibility to attend hearings, but he needed to attend her hearings as well as his own usual hearings. Specifically, her practice involves immigration and detention issues. Accordingly, he needed to represent children applying for Special Immigrant Juvenile Status in guardianship proceedings with intense deadlines. Doing so required him to familiarize himself with the facts of the cases as well as to refresh his memory on the law in this area that he does not usually practice.

Handling these cases in addition to appearing in criminal court nearly every day has taken significant amount of time for him.

\* \* \* \* \*

This Motion is expressly brought under the Federal Rules of Appellate Procedure 2, 26, 27 and Ninth Circuit Rule 31-2.2(b). For the five reasons shown above, including several that demonstrate extraordinary pressures on counsel, on the team, and recent legal developments that accrued just in the past few days, there is good cause to extend the time file by 30 days. Pointedly, there is good cause for an extension of time that arose within the past 7 days, *i.e.*, after Monday, September 12, for an appeal that left mediation just a mere four days ago. A 30-day extension is respectfully requested under these rules.

\* \* \* \* \*

Plaintiff-Appellants, the survivors of decedent 15-year-old Bella Herndon, respectfully request 30 additional days to brief the appeal and appreciate the consideration of the Court of their request. For the foregoing reasons, a 30-day extension request is respectfully sought.

Date: September 19, 2022          Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for The Estate of Isabella "Bella" Herndon, John Herndon, M.H.*, a minor, *T.H.*, a minor

## 9TH CIR. RULE 31-2.2(b) DECLARATION OF COUNSEL

I, Andrew Grimm, a counsel for Plaintiff-Appellants the Estate of Isabella "Bella" Herndon, John Herndon, J.H., a minor, and T.H., a minor, hereby declare and attest to the following in support of a 30-day extension of time to file their Opening Appellate Brief and Excerpts of Record, up to and including, October 19, 2022:

(1) *Current Deadline*: The Opening Appellate Brief and Excerpts of Record are currently due today, Monday, September 19, 2022. 9th Cir. Dkt. 13 (docket order).

(2) *Original Deadline*: The Opening Appellate Brief and Excerpts of Record were originally due May 31, 2022. 9th Cir. Dkt. 1-1 at 2 (Time Schedule Order). After this initial briefing schedule was set, the case entered mediation and remained in mediation until September 15, 2022, *i.e.*, for six months and until four days before the Opening Appellate Brief and Excerpts of Record are currently due to the Court. 9th Cir. Dkt. 14 (Mediation Release Order).

(3) *Length of Extension*: Plaintiff-Appellants are seeking a 30-day extension of time to submit their Opening Appellate Brief and Excerpts of Record with the Court.

(4) *Reasons for Extension*: There are five reasons for extension that are described in detail above.

12

a. This case was in mediation from mid-March until mid-September and was released from mediation four days ago and this is the first post-mediation request for an extension.

b. The lead counsel on this appeal was on his pre-planned Honeymoon for three weeks in the period after the streamlined briefing extension.

c. There have been two recent legislative enactments by the State of California that could have substantive bearing upon this appeal and relate to this wrongful-death case about a fifteen-year-old girl. One I only learned of today and the other I learned about from my lead appellate counsel on Wednesday, September 14, 2022. Both appear to have become law under a week before the current deadline for the Opening Appellate Brief.

d. The number of lawyers willing and able to meaningfully work on the appellate briefs has shrunk. One counsel moved firms. Another counsel is a small nonprofit that has growing responsibilities elsewhere and cannot participate meaningfully in the appeal. Another is part-time with significant other responsibilities.

   e. The remaining lawyers have had extraordinary demands placed upon them in this timeframe, including demands that required them to practice and learn new areas of law. One major deadline for the nonprofit appellate counsel was on September 13, 2022, in a bankruptcy case, a type of law neither counsel practices and that was highly significant to another matter.

 (5) *Representation of Diligence*: I believe that my co-counsel and I have exercised reasonable diligence in the prosecution of this appeal and that and my co-counsel will work as hard as we possibly can on this appeal in the extension timeframe that is now being requested.

 (6) *Position of Other Parties*: Ms. Blanca Young, counsel for Defendant-Appellee Netflix, Inc., indicates that her client **opposes** this extension request. Ms. Young is aware of lead appellate counsel's Honeymoon when she stated this position.

 (7) *Transcript Status*: The court reporter is not in default with respect to any transcripts.

 (8) *Reciprocity and Counsel*: Neither the undersigned nor any counsel at the Digital Justice Foundation has ever opposed an extension request by an opposing counsel in any form. We generally maintain a policy and practice of offering additional time—beyond the time requested—to opposing counsel as a

14

matter of professionalism, courtesy, and in the interest of matters being decided on the merits. I would gladly assent on behalf of my clients to reciprocal extensions for Defendant-Appellee and Ms. Young and her team.

    I hereby declare that the above statements that I made in this Declaration are true to the best of my knowledge and belief, and that I understand that these statements are made for use in a court proceeding and are subject to penalty for perjury.

Date: September 19, 2022          Respectfully submitted,

                                                  */s/ Andrew Grimm*
                                                  Andrew Grimm

## CERTIFICATE OF COMPLIANCE

This Motion contains **2,937** words.

This Motion was prepared in Microsoft Word using Times New Roman 14-point font.

Date: September 19, 2022           Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: September 19, 2022           Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm