# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE ESTATE OF ISABELLA "BELLA" HERNDON, JOHN HERNDON, J.H., a minor, AND T.H., a minor,

    *Plaintiff-Appellants*,

    v.

NETFLIX, INC.,

    *Defendant-Appellee*.

Civil Appeal No. 22-15260

## REPLY ON MOTION FOR EXTENSION OF TIME TO FILE APPELLANTS' OPENING BRIEF & EXCERPTS OF RECORD

On September 15, 2022—just four days before the current briefing deadline—this wrongful-death case concerning a family's loss of their fifteen-year-old daughter was released from mediation. Dkt. 14.

In the pending Motion, the family of the dead young girl are seeking a 30-day extension of the briefing schedule. Functionally, this first motion for an extension would, if granted, leave 34 days to complete an Opening Appellate Brief. The opposing party, however, wants to use the timeframe of mediation for litigation advantage—suggesting that the new deadline should be set no later than September 27, 2022. Dkt. 16-1 at 9. In other words, the opposition wants to leave just five days from today, 11 total, to complete an entire principal appellate brief. Cf. Fed. R. App. P. 31(a)(1) (giving 40 days for an opening brief).

1

Frankly, the family was surprised to learn that their adversary is opposing this extension. After all, this was the *first* extension sought following release from mediation. In the undersigned's experience handling federal appeals throughout the country, the Courts of Appeals routinely grant, and opposing counsel routinely assent to, such first extension requests—especially when the reason for the extension is mediation. (The undersigned have never opposed a request for an extension of time in any forum.)

In fact, this Court appears to consider assent to reasonable extension requests a matter of professionalism. See Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1256 (9th Cir. 2010) ("Exhibiting the professional courtesy expected of officers of the court, [] counsel stipulated to an extension of time[.]"). Furthermore, this Court has indicated "attorneys should **not** oppose reasonable requests for extensions of time brought by their adversaries." Id. (emphasis added) (citing Cal. Attorney Guidelines of Civility & Prof. § 6).

Given these well-ingrained norms of professionalism and this Court's own law, the opposition is surprising. The opposition is all the more surprising because opposing counsel were *aware*, at the time they indicated their opposition, that the family's lead counsel was recently on his honeymoon. Dkt 16-2 at 8. Lead counsel's honeymoon had been planned well before the appeal was released from mediation on September 15.

Opposing counsel aggressively asserts that they don't think a "honeymoon is a basis" for a first post-mediation extension. Dkt. 16-2 at 8.

This Court has suggested otherwise. Under Ninth Circuit law, a honeymoon *is* good cause for an extension: the "*lack of availability due to a previously planned trip is a reasonable basis for seeking an extension of time.*" Ahanchian, 624 F.3d at 1259 n.7 (emphasis added). The opposition simply ignores this Court's law. Dkt. 16-1 at 5 ("Appellants' next excuse is that their lead counsel had a 'pre-planned' three-week honeymoon[.]").

Regardless, the opposition's suggestion that a complex appeal be briefed in 11 days isn't reasonable. And the opposition is telling for what it doesn't say. It doesn't indicate any exigency that requires this appeal be decided on an expedited basis. It doesn't indicate any prejudice by a 30-day extension. Instead, the opposition simply disputes the validity of the reasons for more time—reasons which have been accepted by this Court as justifying extensions.

For both the reasons stated in the Motion and reiterated herein, the family of a deceased fifteen-year-old girl in her wrongful-death action respectfully requests this Court grant a 30-day extension—the family's *first* motion for an extension of time to brief their appeal.

## I. This Appeal Was Released from Mediation Just Four Days Before the Current Briefing Deadline.

While the appeal was in mediation, counsel were diligently working towards and attempting "voluntary resolution" rather than preparing an appellate brief. See 9th Cir. R. 33-1(a). That's the "**Purpose**" of mediation. Id. The point of mediation is to have counsel and parties explore a possible voluntary resolution that would render briefing unnecessary.

Given that the appeal was released from mediation only four days before the current briefing deadline, the family has sought a 30-day extension of time to file their Opening Brief. Dkt. 15. The opposition now argues that a recent release from mediation does not provide a basis for an extension. Dkt. 16-1 at 4. The family disagrees for a few reasons.

***First***, the opposition's description and characterization of confidential mediation proceedings is troubling.

Under this Court's Rules, a party that "participates in the Circuit Mediation Program must maintain the confidentiality of the settlement process." 9th Cir. R. 33-1(c)(4). Nevertheless, the opposition appears to break this rule—or at least skirt the line—by inappropriately describing and characterizing confidential mediation processes. Dkt. 16-1 at 3 ("the case was released from mediation on September 15 after an unsuccessful in-person mediation on August 11"). While we feel confidentiality bars a detailed response, we dispute this characterization.

Fundamentally, there's a problem with the opposition's blasé willingness to characterize confidential mediation proceedings to try to obtain litigation advantage in this Court: the opposition's tactic conflicts with the letter and spirit of Circuit Rule 33-1(c)(4)'s clear confidentiality mandate.

Regardless of how the opposition now inappropriately characterizes the confidential August 11, 2022, in-person mediation, this appeal remained in this Court's mediation program **until September 15**—four days before the current briefing deadline. Dkt. 14.

***Second***, the opposition points to the advisory comments to Circuit Rule 33-1 to argue that the recent release of the appeal from mediation should not be a basis for an extension. Dkt. 16-1 at 4-5. Specifically, the opposition argues that:

> Although the case was not formally released from mediation until September 15, 2022 the mediator did not amend the briefing schedule further, and, as the Circuit Advisory Committee Note to Ninth Circuit Rule 33-1 makes clear, "[t]he briefing schedule established by the Clerk's office at the time the appeal is docketed remains in effect unless adjusted by a court mediator to facilitate settlement, or by the Clerk's office[.]"

Dkt. 16-1 at 4-5 (emphasis added).

Yet, that's the very point of the family's extension request. Dkt. 15. It's to ask the Clerk's Office to adjust the briefing schedule in light of the recent release from mediation.

Nothing in the Circuit Rule supports the opposition's unsupported suggestion that the Clerk's Office or the Court cannot amend the briefing schedule. See Dkt. 16-1 at 4-5. To the contrary, the advisory committee notes are plainly written in the disjunctive: the briefing schedule remains "unless adjusted by a court mediator [...] **_or_ by the Clerk's office**." 9th Cir. Advisory Committee Note to Rule 33-1(a) (emphasis added).

That's what the Motion does. It asks the Clerk's Office or the Court to adjust the deadline—something both permitted and anticipated by the advisory notes cited by the opposition.

\* \* \* \* \*

Here, a family that lost their fifteen-year-old daughter engaged in six months of appellate mediation with the Defendant. The family engaged in mediation when invited to do so, prior to the initial mediation conference, _at Defendant's invitation_. Reply Decl. ¶ 2.

Now, that same Defendant is trying to use time spent meditating, on its own invitation, as a basis to deny the family's request to get reasonable time to prepare a principal brief. Time spent in mediation should not be used for litigation advantage and should not be held against a party. In light of the recent release from mediation on September 15—just four days before the current briefing deadline—a 30-day extension is reasonable.

## II. Lead Counsel Was Unavailable During His Honeymoon.

This Court has stated that the "lack of availability due to a previously planned trip is a reasonable basis for seeking an extension of time." Ahanchian, 624 F.3d at 1259 n.7.

Thus, lead counsel's previously planned honeymoon presents a reasonable basis for extension. After all, lead counsel and his wife had planned, committed to, and undertaken their three-week honeymoon without knowing that the case would be released from mediation on September 15.

Nevertheless, opposing counsel has refused the professional courtesy of accommodating another counsel's family commitments. Dkt. 16-1 at 5 ("Appellants' next excuse is that their lead counsel had a 'pre-planned' three-week honeymoon[.]"). It's a surprising refusal because it's decidedly against professional norms. See Ahanchian, 624 F.3d at 1263 ("There is no better guide to professional courtesy than the golden rule: you should treat opposing counsel the way you yourself would like to be treated.").

Indeed, this Court has noted that respect for "critical personal and family obligations" is essential to the profession. Id. at 1259 n.7. The opposition appears not to respect these important values—or, perhaps, simply wants to be able to use an adversary's honeymoon for litigation advantage.

Moreover, the opposition is all the more surprising because this very opposing party—Netflix, Inc.—recently **agreed** to a 30-day extension of time based on this very honeymoon in a separate appeal. In that appeal, Netflix and Netflix's counsel (represented by a different law firm) readily provided the professional courtesy of assenting to a 30-day extension of time to accommodate lead counsel's honeymoon. See Aug. 23 and Aug. 25 filings in Whyte Monkee Productions LLC v. Netflix, Inc., No. 22-6086 (10th Cir.).

Thus, the family and the family's counsel are not sure why in this case, the opposing counsel withholds the same professional courtesy and cynically trivializes a honeymoon as an "excuse." Dkt 16-1 at 5.

### III. California Has Recently Enacted Laws that Are Highly Relevant to This Appeal.

New California laws also support a 30-day extension to allow counsel to analyze the implications of those laws. The opposition wants to wade into the *merits* of the laws, arguing have no "bearing on this case[.]" Dkt 16-1 at 6.

The opposition's merits position is not only incorrect, but, more importantly, it's premature. The *merits* of the new California laws are appropriately discussed in *merits* briefing. Here, for the present purposes, it's sufficient to show that the laws are topically relevant to the issues involved in this wrongful-death case relating to a fifteen-year-old girl.

*First*, within the last week California enacted a new law, AB2273, called the California Age-Appropriate Design Code Act, that is aimed at addressing the harms to **children** caused by **algorithms**.

For example, the law addresses:

- "Whether **algorithms** used by the online product, service, or feature could harm **children**." AB2273 § 1798.99.31(a)(1)(B)(v) (emphasis added).

- "Whether the design of the online product, service, or feature could harm **children**, including by exposing children to harmful, or potentially harmful, content on the online product, service, or feature." AB2273 § 1798.99.31(a)(1)(B)(i) (emphasis added).

This new law about algorithms and children is plainly relevant to the present dispute, which is also about algorithms and children. Indeed, this is a wrongful-death case where the central allegations relate to the Defendant's reckless and dangerous use of algorithms, over the warnings of leadings experts, that led to the wrongful death of a fifteen-year-old girl.

The claims here assert that the Defendant "manufactured, distributed and/or sold a product, *i.e.*, paywalled platform and streaming content-delivery systems, recommendation **algorithms**, and other means of targeting **children**[.]" Dist. Ct. Dkt. 22 at 22 ¶ 79 (emphasis added). Thus, a law about algorithms and children is plainly relevant to a case about algorithms and children.

9

Here, the plaintiffs are family members of the deceased 15-year-old Bella Herndon—one of the shocking number of children harmed by Defendant's targeting of children via its algorithms in ways that Defendant knew to be deeply harmful. There can be no serious dispute that this harm occurred: the National Institutes of Health associated a sharp spike in the number of child deaths with Defendant's dangerous use of algorithms towards children. Dist. Ct. Dkt. 22 at 4 ¶ 7.

So, to say that the new laws have no bearing on this case is obviously false—and disingenuous.

If the Defendant wants to debate the merits of the legislation by saying the new laws have "no bearing" on this case, it can do so in its merits brief. Yet, there are a number of possible ways that the new laws have significance to this case:

- This case asks the question of whether algorithmic harms are cognizable under California tort law. The new law suggests that California has given a clear answer: yes.

- This case explores asks whether algorithmic targeting and associated harms can constitute negligence and whether algorithmic designs implicate duties of care to those affected by them. The new law suggests that California has given a clear answer on this too: yes.

- The case also asks whether algorithms can be subject to California products-liability laws, *i.e.*, whether an algorithm could be considered a product.

Defendant argued below that an algorithm could never be a product under California law. The California legislature begs to differ when it speaks of an "online **product**" in the context of an algorithm.

In short, the new California laws are plainly relevant and, regardless, a *merits* dispute over their relevance is appropriate to a *merits* brief.

*Second*, within the past few weeks, this Court issued an opinion addressing the applicability of California's Anti-SLAPP law in federal courts after the Supreme Court's Shady Grove decision. CoreCivic, Inc. v. Candide Grp., LLC, 2022 U.S. App. LEXIS 24417, *5 (9th Cir. Aug. 30, 2022).

That new case addressing anti-SLAPP is particularly important and relevant to this appeal because the Defendant here is threatening to seek over $700,000 in fees against a family that lost their fifteen-year-old daughter. Grimm Reply Decl. Ex. 1.

Both of these recent developments favor granting the Motion's extension request.

## IV. The Family's Legal Team Has Been Cut in Half and Those Remaining Available Have Had Extraordinary Demands.

The Motion explained that, while six attorneys represented Bella Herndon's surviving family below, only three attorneys are able to work on briefs in this appeal. The team has been cut in half.

11

The opposition says "Appellants do not explain why all six people are necessary to brief the case on appeal." Dkt. 16-1 at 8. Opposing counsel then say they have "managed to handle this case with a team of three attorneys from the beginning." Dkt. 16-1 at 8.

Notably, opposing counsel are at a prominent Big Law firm with hundreds of attorneys and hundreds of other employees and support staff. The firm website touts that "[*i*]*n every representation*, our ***200 lawyers*** are expected to make a difference in developing and implementing strategies"[1]—so a comparison of the two sides' firms might not be apt. Perhaps, a 200-lawyer firm, supported by a large in-house counsel's office, might have more resources than a small-but-dedicated team of two non-profit attorneys and one lawyer from a two-lawyer practice.

To equate the two teams, as the opposition would like, is comparing apples to oranges.

Regardless, as discussed in the Motion, the three remaining attorneys had extenuating circumstances—urgent, time-sensitive filings in new areas of law that they don't otherwise practice (bankruptcy and immigration). Of the three, the lead counsel was on a pre-planned honeymoon. His nonprofit law partner was single-handedly tending to the inordinately heavy press of business. The third, and final appellate attorney, has been in trial while covering for his law partner.

---

[1] https://www.mto.com/about-us.

12

\* \* \* \* \*

The substantial reduction in number of counsel for the appeal; the unusual heavy press of business on those remaining counsel (and the honeymoon of lead counsel); the recent enactment of highly relevant statutes; and the very recent release of this appeal from this Court's mediation program all favor of granting the family a reasonable request for a 30-day extension of time in this complex, wrongful-death action.

Date: September 22, 2022

Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for The Estate of Isabella "Bella" Herndon, John Herndon, M.H.*, a minor, *T.H.*, a minor

## REPLY DECLARATION OF COUNSEL

I, Andrew Grimm, a counsel for Plaintiff-Appellants the Estate of Isabella "Bella" Herndon, John Herndon, J.H., a minor, and T.H., a minor, hereby declare and attest to the following in support of a 30-day extension of time to file their Opening Appellate Brief and Excerpts of Record, up to and including, October 19, 2022:

(1) I have attached to this Declaration a true and correct copy of email correspondence between myself and my opposing counsel, Mr. Blanca Young, as **Exhibit A**. In one of those emails, Ms. Young says that "fees are about $700,000." Ex. at 1.

(2) On March 2, 2022, an in-house counsel for the Defendant emailed a letter to me and Mr. Ryan Hamilton, my co-counsel, expressly offering mediation and, in my view, inviting it.

I hereby declare that the above statements that I made in this Declaration are true to the best of my knowledge and belief, and that I understand that these statements are made for use in a court proceeding and are subject to penalty for perjury.

Date: September 22, 2022     Respectfully submitted,

                             */s/ Andrew Grimm*
                             Andrew Grimm

## CERTIFICATE OF COMPLIANCE

This Reply contains **2,584** words, excluding the Declaration and the portions ordinarily exempted from word counts.

This Motion was prepared in Microsoft Word using Times New Roman 14-point font.

Date: September 22, 2022          Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: September 22, 2022　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　*/s/ Andrew Grimm*
　　　　　　　　　　　　　　　　　Andrew Grimm