Appeal No. 22-15260

# United States Court of Appeals for the Ninth Circuit

The Estate of Isabella "Bella" Herndon; John Herndon; J.H., a minor; T.H., a minor;

*Plaintiff-Appellants*,

v.,

Netflix, Inc.,

*Defendant-Appellee.*

On Appeal from the United States District Court
For the Northern District of California

Case No. 4:21-cv-06561-YGR
The Hon. Yvonne Gonzalez Rogers, United States District Judge

BRIEF OF AMICUS CURIAE CINDY KU,
SOFTWARE-AS-A-SERVICE PROFESSIONAL
IN SUPPORT OF APPELLANTS

Cindy Ku
415-691-7447
731 Market St, Ste 200
San Francisco, CA 94103
Ckuku17@gmail.com

Introduction:

As a professional working in tech-based startups and software-as-a-service companies over the last 10 years, I see first-hand how in this new age of digital marketing and corporate use of social media, every business has an awareness of how they affect their customers. Netflix, as a media-focused corporation holds a level of power in the way they collect customer data, and how they use that data to tailor and target their audiences, that is unprecedented in human history. It seems clear to me, from their strategy in releasing "13 Reasons Why" in the spring of 2017, Netflix did not care that their target were teenagers, despite a large body of evidence of how this demographic can have many vulnerable members. This is why I believe this suit brought by Isabella Herndon's family, should move forward, and have its day in court.

Argument:

According to the Centers for Disease Control (CDC), suicide is the leading cause of death for teenagers, ages 14-to-15-years-old.[1] Self-harm, another type of destructive behavior that can precede suicide, is heightened for girls and young women.[2] There is also evidence that suicide contagion - the exposure to suicidal behavior within one's family, peer group or media reports that can result in an increase in suicide – can particularly affect adolescents and young adults. These demographic groups - young adults, girls, teenagers – were the very groups to which Netflix was marketing "13 Reasons Why". They marketed to Bella, a young adult woman, who was just 3 days away from her 16th birthday, when she took her

---

[1] https://www.childrenshospital.org/conditions/suicide-and-teens#:~:text=Among%20children%20between%20the%20ages,the%20greatest%20predictors%20of%20suicide.
[2] https://www.cdc.gov/suicide/facts/disparities-in-suicide.html

own life.

Suicide Contagion has been described by Reportingonsuicide.org as a real risk, based on over 100 studies worldwide.³ The organization has highlighted how media can be a contributing factor in this phenomenon, including the use of sensational headlines and descriptions of suicide method. The organization also highlighted examples of how media can play an important role in preventing suicides, citing inclusion of local/national help hotlines, inclusion of warning signs, description of suicide as being preventable, as positive and responsible ways to approach media coverage. The version of "13 Reasons Why" that Bella watched when it first aired, failed on most of these counts. Where initially, Netflix did add warning messages to two episodes and an after-series commentary, the things that stood out to me when I watched the re-tooled version in June of 2017 - the prominent warnings and information for help, I had come to take for granted watching other network shows that touched on such difficult topics - were not as present for Bella.

I have worked for the last 10 years in a number of start-up companies, as a corporate accountant. As part of the financial and operational arm of most organizations, accountants get a broad view of all types of concerns that a business entity can have. I've worked at a social-media-direct company, a vocational school for engineers, and an ecommerce oriented software-as-a-service provider. Every company I worked at in these 10 years, had corporate Facebook, Instagram, Twitter, and LinkedIn accounts, at minimum. Whatever their business model, whether social-media-based or not, it was clear to me, each of those companies

---

³ https://reportingonsuicide.org/recommendations/

understood there was power in social media and digital marketing. As such they utilized social media platforms, and the information they collected on users, to control the narrative of their online corporate image, and to engage their customers. Netflix certainly knows its power as a digital media content provider and controller of a vast viewership. Netflix has recently boasted having 45million+ accounts watching a new movie in its first week of release.[4]

There is a concept of defects in product that "deal with improper instructions and failures to warn consumers of latent dangers in the product".[5] If Netflix produces software and algorithms, I would posit that in the unprecedented era of social media influence in the world today, there must be an equivalent level of liability when it comes to how a corporation like Netflix should be engaging in digital marketing and algorithmic control. It is terribly ironic to me that the series incorporated into its fictional storyline how damaging social media today can be, how rumors and lies can spread like wildfire in what seems like an "all-consuming" way to a teenager.[6] Yet in their real-life social media marketing campaigns, Netflix spread damage in the same way, not learning anything from the very subject matter they were highlighting in this series. They have the ability to know who they would be delivering what type of content to, and Netflix used that information to actively engage every demographic with personalized viewing experiences.[7] Netflix chose to target content experts (including ones they engaged)

---

[4] https://www.fastcompany.com/90309308/by-any-memes-necessary-inside-netflixs-winning-social-media-strategy

[5] https://www.law.cornell.edu/wex/products_liability

[6] https://13reasonswhy.fandom.com/wiki/Differences_between_the_book_and_Netflix_Series

[7] https://www.simplilearn.com/tutorials/marketing-case-studies-tutorial/netflix-marketing-strategy

had warned could be dangerous to young adults and adolescents, with hardly any qualification,  encouraging it to go "viral" , directly at that vulnerable teenage demographic. How can it be a First Amendment right, for any corporation to wield the level of influence Netflix has over its vast viewership without any sense of responsibility over how they market such volatile material as "13 Reasons Why"?

As of July 2019, Netflix has edited and removed that nearly-3-minute-long-suicide scene, ostensibly because the show's creators "…finally came around to the idea that the portrayal of Hannah's death might be unnecessarily damaging".[8]
But given that they had many experts express warnings before "13 Reasons Why" first aired in the spring of 2017, I can believe  an alternate narrative: much like when some manufacturers release products with a known defect, and make a cost-benefit analysis that it'd be cheaper to pay small settlements to anyone harmed rather than curb the potential for profit with warnings or expensive defect-correction, Netflix made a callous calculation that they could make much more money by letting the shocking content of "13 Reasons Why" drive more interest in the show. This is clearly speculation, but hardly one that is unimaginable, given their attention to their social media strategy.  Only after two years of benefitting from both good and bad press for the show, and mounting evidence and outcry that the show did drive increases in suicide ideation amongst teenagers, did Netflix finally remove the scene.  It was just two years too late for Bella.

Conclusion:

---

[8] https://www.theatlantic.com/entertainment/archive/2019/07/netflix-suicide-scene-13-reasons-why/594166/

In conclusion, I strongly urge the court to grant an appeal, and allow Herndon vs Netflix to move forward. I believe in this day and age of pervasive social media, digital marketing and algorithmic control, the kind of outsized influence Netflix has on its millions of viewers is too great to leave unchecked. Where there is great power, there should be a great responsibility demonstrated. If they cannot hold themselves accountable, putting lives like Isabella Herndon's at risk, please let a court hold them accountable.

Sincerely,

/s/ *Cindy Ku*
Cindy Ku[9]
415-691-7447
731 Market St, Ste 200
San Francisco, CA 94103
Ckuku17@gmail.com

---

[9] I, Cindy Ku, certify that (i) no party's counsel authored the brief in whole or in part; (ii) no party's counsel contributed money that was intended to fund preparing or submitting the brief, and (ii) no person other than I, the amicus curiae, contributed money that was intended to fund preparing for submitting the brief.

## CERTIFICATE OF COMPLIANCE

This amicus brief contains fewer than 6,500 words.

This amicus brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

/s/ *Cindy Ku*

Cindy Ku

415-691-7447

731 Market St, Ste 200

San Francisco, CA 94103

Ckuku17@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that I have requested that this amicus brief be filed electronically, and that service will be effectuated upon that submission.

/s/ *Cindy Ku*

Cindy Ku

415-691-7447

731 Market St, Ste 200

San Francisco, CA 94103

Ckuku17@gmail.com