IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE ESTATE OF ISABELLA "BELLA" HERNDON, JOHN HERNDON, J.H., a minor, AND T.H., a minor,<br><br>*Plaintiff-Appellants*,<br><br>v.<br><br>NETFLIX, INC.,<br><br>*Defendant-Appellee*. | Civil Appeal No. 22-15260 |

**APPELLANTS' RESPONSE WITH RESPECT TO THE MOTION
OF PROPOSED AMICUS CURIAE FIRE ET AL.**

The quintessence of this case is algorithmic control.

Algorithmic control is the central fact. Legally, algorithmic control is the primary distinguishing feature. Likewise, algorithmic control provides the central limiting principle. Allegations demonstrating algorithmic control permeate the complaint, including statements about the *extent* of algorithmic control from Defendant's own lead engineers. In fact, Defendant's exercise of its algorithmic control—with deadly effect, after forewarning, without any attempt to avoid harm as to a specific child that could have been accomplished *without* limiting public distribution—is the central liability-creating act here.

Accordingly, a proffered amicus brief that fails to engage or discuss the essential feature of this case on the merits—algorithmic control—may be of limited relevance.

1

Appellate Rule 29 requires a movant intending to submit a brief as amicus curiae to state not only the movants' "interest;" Fed. R. App. P. 29(a)(3)(A), but also to state "why an amicus brief is desirable" and, critically, "*why the matters asserted are **relevant** to the disposition of the case*[,]" Fed. R. App. P. 29(a)(3)(B).[1] In turn, the Committee Notes suggest that a proposed amicus brief that fails to engage "relevant matter" is "not favored." Common Notes on Rules – 1998 Amendment to Rule 29 (quoting Sup. Ct. R. 37.1).

Notably, different appellate jurists view and apply Rule 29's standards differently.

Then-Circuit Judge Alito applied a permissive approach. See Neonatology Assocs., P.A. v. Comm'r, 293 F.3d 128, 133 (3d Cir. 2002) (Alito, J., in chambers) (For a motion panel, "it is preferable to err on the side of granting leave. If an amicus brief that turns out to be unhelpful is filed, the merits panel" can "simply disregard the amicus brief."). By contrast, retired Circuit Judge Posner applied a restrictive approach. See Ryan v. CFTC, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J., in chambers) ("[I]t would be good to scrutinize these motions in a more careful, indeed a fish-eyed, fashion.").

---

[1] All emphasis is supplied unless otherwise indicated. Citations to the Amicus Motion are to the docket-stamped pagination because it has no internal pagination. Citations to a brief (Opening, Answering, or proffered Amicus Briefs) are to the document's pagination.

Yet both Judge Alito's and Judge Posner's approaches to amicus briefs find common ground in viewing relevance as a requirement. Neonatology, 293 F.3d at 133 ("Although the Rule [29] does not say expressly that a motion for leave to file should be denied if the movant does not meet the requirements of (a) an adequate interest, (b) desirability, and *(c) relevance*, this is implicit."); Voices for Choices v. Ill. Bell Tel. Co., 339 F.3d 542, 545 (7th Cir. 2003) (suggesting courts should deny amicus motions that proffer briefs "irrelevant to judicial decision making, except in a few cases").

Appellants are unaware of any specific articulation from this Court of Appeals on these matters—*i.e.*, (1) whether to apply a permissive or restrictive approach, and (2) whether relevance is required for proposed amicus briefs. Moreover, *even if*, as here, a proposed amicus brief fails to engage the quintessence of the case, it could still be helpful.

Here, even though the proposed amicus fails to engage the central fact of algorithmic control, one could still view it as helpful. For example, the proposed amicus brief's failure to engage algorithms demonstrates just how powerfully the facts of algorithmic control here function as limiting principles—without disturbing existing law.

Likewise, where, as here, the amicus is proffered by a prominent First Amendment scholar and a slew of Free Speech-focused organizations, the failure to cite or identify any cases on algorithmic control—or even algorithms at all—show just how novel and how open these questions are.

Ultimately, the relevance of the proposed amicus brief under this Circuit's reading of Appellate Rule 29's relevance requirement, and as applied to *these* claims about tortious algorithmic control, is unclear.

*****

Algorithmic control is the central component of the claims here on the merits, yet the proposed amicus brief does not engage—let alone mention—algorithmic control.

As both the complaint and Opening Brief detail at some length, this case and the instant claims implicate Defendant Netflix's deployment of its powerful, proprietary algorithms—informed by astonishing and legally unprecedented levels of data collection and analysis—to target and *algorithmically control* a specific minor (Isabella "Bella" Herndon) online in a manner that tortiously caused her death. 6-ER-967-992; Opening Br. 7-18.

This algorithmic control is *the* central fact of this appeal. And, this algorithmic control is *the* basis for liability here. The Opening Brief explained that Netflix spent "over $150 million employing over 300 technologists just to maintain

4

and improve its personalized algorithmic targeting." Opening Br. 7. The complaint detailed how Netflix used cutting-edge Big Data analytics that permitted it to algorithmically control users on the Netflix platform, control that it exercised at Bella Herndon. Br. 7-18; 6-ER-980-982.

Indeed, Netflix's own engineering director publicly described "how they **control** what you watch" by using their algorithms as informed by their Big Data analytics. 6-ER-980-981 (quoting Netflix's engineering director).

Concretely, algorithmic control means that its algorithms dictate "about 75%" of all viewing decisions made on the Netflix's platform. 6-ER-982¶63-64. The fact of algorithmic control is front and center to the claims here. It's not merely that Netflix uses an algorithm. It's not just that the algorithm provides recommendations. Rather, it's that Netflix knowingly wielded algorithmic control over vulnerable minors, like Bella Herndon—*i.e.*, exercised its control in a ways it knew would cause grave harm; failed to take even basic precautions when forewarned; even when it knew the extent of its ability to control (and to personalize its approach), and even when it could have used that very precision that informs it control to avoid harm here.

The proposed amicus brief simply does not engage *this* central fact. In that sense, the proposed amicus brief does not engage *these claims*. Indeed, given that algorithmic control is the gravamen of Plaintiffs' complaint, one might expect this

5

central fact to be mentioned. It isn't. Rather, the proposed amicus brief simply ignores algorithmic control altogether. Instead, it recasts Plaintiffs' claims as more traditional claims about *making* creative control or *distributing* to the public through ordinary channels—with little to nothing to say about methods of technology that operate to algorithmically *control* children's behaviors. Without engaging algorithmic control, the proposed amicus asserts that precedents (none of which involve algorithmic control) bar claims about algorithmic control.

There are a several ways to see that the amicus does not engage ***these*** claims, but rather attacks claims not made, *i.e.*, strawman claims nowhere made in the complaint.

An easy way to know the proposed amicus doesn't discuss algorithmic control is by what it does *not* mention, *i.e.*, by the words left out. The world "algorithm" is absent from the proposed amicus brief. No mention of Big Data is found. It doesn't mention personalization. And, it certainly doesn't mention algorithmic control. One would search the proposed amicus brief in vain for *any* discussion, engagement, or even mention of these central facts—*i.e.*, the liability-creating facts which actually gave rise to Plaintiff's claims. (Notably, neither did the District Court in its order below. 1-ER-2-8.)

Another way, it to take notice of the types of potential defendants **not** named in this litigation. The amicus motion and proposed brief discuss "writers" (Dkt. 64-

6

1 at 4¶5), "novelists" (id.), "authors" (id. at 5¶7), and "filmmakers" (Dkt. 64-2 at 13). Yet, the complaint did not name any such creative persons as defendants. The complaint did not name novelist Jay Asher (who wrote the novel *13 Reasons Why*) as a defendant. 6-ER-967-992. Nor did the complaint name producer Selena Gomeze as a defendant. Id. Nor did the complaint name Brian Yorkey, the "Pulitzer winning playwright" who adapted the novel into a screenplay as a Defendant. Dkt. 61-1 at 8.

Instead, the sole defendant named here is the party that exercise algorithmic control. That's because Plaintiffs' claims are expressly predicated upon algorithmic control targeted privately at a specific individual child, **not** creation or even public distribution of content. 6-ER-974 ("Netflix is *not* being sued for its creation, dissemination, exhibition, advertisement or other similar promotion of its Show, Thirteen Reasons Why.").

Importantly, *none* of these creative types that the proposed amicus brief discusses (*e.g.*, writers, novelists, filmmakers, etc.) even *could* be subject to liability for Plaintiffs' claims or under Plaintiffs' theories. That's because the essence of these claims is Defendant's tortious algorithmic control. Filmmakers making movies don't use algorithms to control and target specific minors with personalized communications. Writers don't algorithmically control viewers' decisions when writing a book. Book publishers and television channels don't control what children

7

watch—with a self-proclaimed 75% efficiency rate. "Shakespeare" and Tolstoy didn't use technological products to algorithmically control children. See Amicus. Br. 4 (discussing Shakespeare's plays and Tolstoy's *Anna Karenina*).

Thus, the proposed amicus brief is of limited relevance because it doesn't engage the specific act giving rise to liability here: tortious algorithmic control. Indeed, it completely ignores the technological products (*i.e.*, algorithms) and tortious acts (*i.e.*, algorithmic control) giving rise to the claims here.

For example, the amicus brief discuss "[b]ookstore staff" who may "recommend books to patrons" based on interests and past purchases. Amicus Br. 15-16. That's far afield from a technology company wielding a hundred-million-dollar algorithm, Opening Br. 7, to algorithmically "control what you watch," 6-ER-981, with a self-proclaimed "75 percent" success rate[,]" 6-ER-982¶64. A bookstore staff's recommendation does not involve algorithmic control. Nor does "listing books as bestsellers[.]" Amicus Br. 17. Defendant's use of historically unprecedented technologies to algorithmically control a specific child, in an individualized and personalized fashion, is fundamentally distinct from a librarian's friendly recommendation or a generally published best seller list put in the newspaper. The latter does not involve algorithmic control. Nor do any of the propose amicus brief's cited authorities.

8

Shying away from the novelty of Plaintiffs' claims and the open legal questions surrounding Defendant's algorithmic control, the proposed amicus brief engaged in an unwarranted conflation. Specifically, the language of the proposed amicus brief focuses on creative works themselves like books, plays, and films in general, e.g., Amicus Br. 4—*not* the tortious *acts* undertaking the technology: algorithmic control over Bella Herndon.

Creative works, like books, plays, and films, do not control people—let alone algorithmically control them.

Nor does the creation, production or general distribution, such as showing a film in a movie theater, entail algorithmically controlling specific individuals. Nor does a "billboard urging people to watch [a] film" involve algorithmic control. See, e.g., Amicus Br. 15. None of *those* acts involve use of an algorithm to target and control specific individuals. So not of these acts of generalized advertising or promotion, as opposed to specific and measurable control over a specifically known person, are at issue.

The complaint was clear that algorithmic control is the quintessence of this case. 6-ER-980-982. In this sense, the proposed amicus brief (and its cited cases) are unresponsive to ***these*** claims turning on Defendant's tortious use of its algorithms.

***Second***, the proposed amicus brief is notably bereft of any cases addressing the issue of algorithmic control—or even any cases dealing with algorithms whatsoever. This lack of discussion or engagement of algorithmic control and algorithms has real significance for the amicus brief's First Amendment analysis. Perhaps most important is that the amicus brief's failure to find or identify any First Amendment cases dealing with the issue of algorithmic control (or algorithms more generally) demonstrates that these claims implicate *open questions* of Constitutional jurisprudence.

Indeed, the proposed amicus brief does not to engage the central factual allegations made in Plaintiffs' complaint—instead, simply sidestepping and ignoring Plaintiffs' claims about algorithmic control and algorithmic targeting of specific children, like Bella Herndon. Notably, the District Court's, 1-ER-2-8, and Defendant's briefing below, 6-ER-1010-1044, also refused to engage these central factual allegations on algorithmic control.

One way to view recasting of the complaint's factual allegations and claims regarding algorithmic control is that the facts remain hotly disputed at this initial, pre-discovery stage of the case. See 6-ER-1023 n.1 (disputing factual allegations about how Netflix's "recommendation algorithm" works).[2]

---

[2] Notably, however, the complaint cites public statements made by Netflix's *own* engineering director about "how they control what you watch" using the Netflix

This procedural posture, before there's been any factual development through any discovery, is, however, a suboptimal procedural posture at which to address open questions of constitutional law—especially open questions implicating novel technological facts surrounding Netflix's algorithmic control. See, e.g., McGary v. City of Portland, 386 F.3d 1259, 1270 (9th Cir. 2004) ("Rule 12(b)(6) dismissals are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development."); see also Berndsen v. N.D. Univ. Sys., 7 F.4th 782, 790 n.7 (8th Cir. 2021) (noting that "[f]our circuits have cautioned against Rule 12(b)(6) dismissals when, as here, complaints include novel legal theories."); see also, 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2020) ("The district court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or even 'extreme,' since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.").

In short, amicus' refusal to engage the central factual allegations regarding algorithmic control demonstrates that this early procedural posture, prior to any factual development, is not the posture at which to evaluate novel questions of constitutional law implicating novel technologies.

---

algorithms. 6-ER-980-981¶57. And, of course, at this procedural posture Plaintiffs' factual allegations are to be taken as true.

11

Moreover, the amicus conflates algorithmic targeting a work at minors with the work itself. That is, the amicus draws no distinction between content and the act of algorithmically targeting content at particular children. See e.g. Dkt. 64-2 at 4 (discussing "books, plays, and films"). Of course, the legislatures readily draw such distinctions–as the California Age-Appropriate Design Code Act readily demonstrate. See, e.g., Cal. Age-Appropriate Design Act § 1798.99.31(a)(1)(B)(i). And, the proposed amicus brief simply assumes that a First Amendment right to create certain content necessarily entails an absolute right to do anything one wants with that content, with absolute impunity. But that doesn't follow.

For example a computer coder might have a First Amendment right to create (i.e. write) a computer code that hacks into computers. But it wouldn't follow that there is a First Amendment right to implement and use that code to hack into other computers. See, e.g., Universal City Studios v. Corley, 273 F.3d 429 (2d. Cir. 2001). Indeed, Congress has passed laws of general applicability prohibiting hacking. C.f. Van Buren v. United States, 141 S. Ct. 1648, 1652 (2021) (interpreting and applying the Computer Fraud and Abuse Act of 1986 (CFAA)). The CFAA is not unconstitutional just because someone might have a first amendment right to write code. Laws of general applicability could still restrict what one *does* with that code.

Or consider how some jurists have recognized a First Amendment right to create consensual, adult pornography. Yet, it certainly does not follow that a First

12

Amendment right to create such content would also entail a right to target such content to specific, individual children. C.f. Ashcroft v. ACLU, 535 U.S. 564, 585 (2002) ("We hold only that COPA's reliance on community standards to identify "material that is harmful to minors" does not *by itself* render the statute substantially overbroad for purposes of the First Amendment."); cf. Miller v. California, 413 U.S. 15, 24 (1973) (defining obscenity under, *inter alia*, community standards). Indeed, Congress has passed generally applicable laws against such acts. 18 U.S. Code § 1470 (prohibiting the "transfer of obscene material to minors"). A broad brush, absolutist First Amendment approach would fail to distinguish between a right to create content and the act of targeting minors with that content.

Or finally, consider how algorithms and data are used to operate and run self-driving cars. Just because there might be a First Amendment right to create certain computer code and algorithms it would not follow that the First Amendment would necessarily insulate a defendant from generally applicable tort law if that computer code caused a self-driving car to run a redlight, running over pedestrians crossing a cross-walk.

Simply put, a First Amendment right to create content does not entail an immunity to do whatever one wants with that content. The law readily draws distinctions between rights to create certain content and generally applicable laws that govern what people can do with that content.

Finally, the principle of Constitutional avoidance militates against wading into these issues at this stage. 1-ER-7 ("[T]he parties agreed that the Court did not need to reach this issue based upon the doctrine of constitutional avoidance.").

*****

In sum, the proposed amicus brief doesn't discuss algorithmic control whatsoever.

Yet, algorithmic control is the central tortious activity at issue here—not writing a novel, not producing a show, not publicly distributing a show, and not putting that show online. The complaint, the claims, and the Opening Brief all make clear that this is a case about algorithmic control—control publicly *admitted* by Defendant's own lead engineers. In this sense, the proposed amicus brief fails to engage the essence of this case.

It's not just that.

The proposed amicus brief doesn't discuss or engage the facts that underpin the acknowledged algorithmic control. It doesn't discuss or engage the largescale data apparatus that gives Defendant precise information about specific children (their moods, their mental states, *etc.*); the pervasive deployment of a targeting algorithm that controls most decisions made on the streaming platform; the "personalization" that means that the very control at issue here is readily differentiated between different individuals (and could have treated individual

14

vulnerable children quite differently from others). And, of course, Defendant *knowingly* exercises this control. Thus, the proposed amicus brief is not directly relevant to the claims here.

Yet, the proposed amicus brief does demonstrate just how distinct these facts are from the First Amendment cases it cites. Given that the proposed amicus brief is proffered by a prominent scholar and a slew of First Amendment-focused organizations, the propose amicus brief is helpful in showing just how novel these legal questions are. And, given how factually and legally distinct these claims are from the case law cited, the proposed amicus brief demonstrates how algorithmic control serves as a powerful limiting principle.

*Without* forgoing creation, *without* forgoing online release, and *without* forgoing even algorithmic targeting at children who the data didn't indicate were vulnerable, Defendant could have avoided death here with two modest tweaks: a meaningful warning to a vulnerable girl (even if not to others who were not vulnerable) and reticence to exercise the full extent of algorithmic control over those that the data indicated were most vulnerable.

Ultimately, the amicus brief's focus on claims not made and facts not at issue serves as a powerful reminder that algorithmic control is the quintessence of this case. Algorithmic control distinguishes this case. Algorithmic control presents novel questions of law. And, algorithmic control provides clear limiting principles.

15

Thus, the amicus brief may be most relevant for what it does not do: address algorithmic control. Appellants do **not** oppose the motion for leave to file the amicus brief and defer entirely to the judgment of the Court regarding whether to grant leave to file the proposed amicus brief.

Date: June 22, 2023                Respectfully submitted,

                                         DIGITAL JUSTICE FOUNDATION

                                         */s/ Gregory Keenan*
                                         Gregory Keenan
                                         DIGITAL JUSTICE FOUNDATION
                                         81 Stewart Street
                                         Floral Park, NY 11001
                                         (516) 633-2633
                                         Gregory@DigitalJusticeFoundation.org

                                         *Attorney for The Estate of Isabella "Bella" Herndon, John Herndon, M.H., a minor, T.H., a minor*

## CERTIFICATE OF COMPLIANCE

This Response contains **3,341** words, excluding the Declaration and the portions ordinarily exempted from word counts.

This Response was prepared in Microsoft Word using Times New Roman 14-point font.

Date: June 22, 2023                              Respectfully submitted,

*/s/ Gregory Keenan*
Gregory Keenan

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: June 22, 2023                    Respectfully submitted,

                                       */s/ Gregory Keenan*
                                       Gregory Keenan