IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE ESTATE OF ISABELLA "BELLA" HERNDON, JOHN HERNDON, J.H., a minor, AND T.H., a minor,<br><br>  *Plaintiff-Appellants*,<br><br>  v.<br><br>NETFLIX, INC.,<br><br>  *Defendant-Appellee*. | Civil Appeal No. 22-15260 |

**APPELLANTS' RESPONSE IN OPPOSITION TO APPELLEE'S MOTION TO STRIKE APPELLANTS' RESPONSE TO THE AMICUS MOTION OF PROPOSED AMICUS CURIAE FIRE ET AL.**

  This is a wrongful-death and survivor action that arose out of the death of a 15-year-old girl. The Plaintiff-Appellants are her surviving father and brothers. Moreover, the claims at issue implicate the deaths of not just one deceased child, but many.

  The central issue—and quintessence of this case—is algorithmic control. Algorithmic control is the central fact here. Legally, algorithmic control is the primary distinguishing feature. Indeed, Defendant's exercise of its algorithmic control—with deadly effect, after forewarning, without any attempt to avoid harm that could have been avoided as to specific children *without* meaningfully limiting Defendant's profit-driven activities—is the central liability-creating act at issue in this case.

1

This case is about algorithmic control.

Accordingly, when a prominent First Amendment scholar representing a slew of Free Speech-focused organizations sought to submit a brief as amici curiae in this case, one might expect that this proffered amicus brief would discuss algorithmic control—or at least mention it. After all, that's what the case is about. Yet, the proffered amicus brief never discusses—or mentions—algorithmic control. 9th Cir. Dkt. 64-2.

The proffered amicus *brief* doesn't discuss algorithmic control. It doesn't mention algorithmic control. It doesn't discuss the facts underlying Defendant's algorithmic control—the billions invested in data analytics, algorithms, monitoring, and testing to control children's behaviors. It doesn't cite cases involving algorithmic control. The central liability-creating acts by Defendant are nowhere mentioned in the amicus brief.

Likewise, the amicus *motion* never cites the applicable rule of appellate procedure (Rule 29) or identifies the standards governing leave to file an amicus brief. 9th Cir. Dkt. 64-1.[1]

---

[1] Prior to filing, amicus counsel had inquired about Appellants' consent to the amicus brief. Appellants' counsel were in the midst of emailing amicus counsel to indicate Appellants would prefer to review the proposed amicus brief prior to taking a position when amicus counsel filed the amicus motion and brief. Notably, amicus counsel filed the amicus motion and brief *four days early*. Compare 9th Cir. Dkt. 62-1 (filed 3 days after Appellee Brief) with Fed. R. App. P. 29(a)(6) (permitted to file up to 7 days after Appellee Brief).

Given these deficiencies in the amicus motion, Appellants responded. After an introduction, 9th Cir. Dkt. 72 at 1, Appellants' response to the amicus motion proceeded as follows:

- It filled in the amicus motion's gaps by citing and discussing the governing standards for amicus motions found in Federal Rule of Appellate Procedure 29, the case law, and the rule advisory committee notes. 9th Cir. Dkt. 72 at 2-3.

- Given that one of the central standards for an amicus motion is *relevance*, Appellants' response to the amicus motion gave the reader background on the central facts of this case—*i.e.*, algorithmic control over children—to permit assessment of relevance. 9th Cir. Dkt. 72 at 4-5.

- Then, Appellants' response to the amicus motion explained how the proffered amicus brief nowhere discusses (or even mentions) algorithmic control or the facts underlying it, 9th Cir. Dkt. 72 at 5-9, and nowhere cites any case law or other legal authorities discussing algorithmic control, 9th Cir. Dkt. 72 at 10-11.

- Appellants' response to the amicus motion then continued to discuss the relevance criterion, explaining why the amicus brief's discussion of a book or movie's mere public availability is not relevant to a dispute about algorithmic control. 9th Cir. Dkt. 72 at 12-15.

- Finally, Appellants' response to the amicus motion concluded by explaining how the Court might nonetheless view the amicus brief as helpful and deferred to the Court's judgment with respect to the relevance of the amicus brief. 9th Cir. Dkt. 72 at 15-16; see also id. at 3-4.

In short, Appellants' response to the amicus motion was focused on the amicus brief's relevance—with relevance being something the rules expressly ask the amicus motion to address. See Fed. R. App. 29(a)(3), (3)(B) ("*The [amicus] motion **must** be accompanied by the proposed brief and state*: […] the reason why an amicus brief is desirable and *why the matters asserted are relevant to the disposition of the case*.").[2]

To Appellants, a proposed amicus brief that nowhere engages algorithmic control—in its discussion or via its cited authorities—is of limited relevance to the disposition of an appeal about algorithmic control. That's Appellants' response to the amicus motion in a nutshell.

And, after the response was filed, the proposed amici curiae chose *not* to reply to defend the relevance of their proposed amicus brief—a brief that nowhere engages, discusses, or even mentions algorithmic control. No reply on the amicus motion has been filed.

---

[2] All emphasis is supplied unless otherwise indicated. Internal quotations, citations, and brackets are often omitted.

4

Instead, Appellee filed a motion to strike Appellants' response to the amicus motion. 9th Cir. Dkt. 72 (motion to strike or "Motion"). Appellees' primary argument in the Motion is the false assertion that Appellants' response to the amicus motion is a "reply brief on the merits"—one Appellee says is intended to function as an extension beyond the 7,000 words permitted in a reply brief. See 9th Cir. Dkt. 73 at 2.

Yet, Appellants' response to the amicus motion is plainly not a reply brief. It's plainly not a reply brief because Appellants' response to the amicus motion <u>*nowhere even cites the Appellee Brief (9th Cir. Dkt. 61-1) anywhere in that response*</u>. 9th Cir. Dkt. 72. The amicus response doesn't cite the Appellee Brief; doesn't discuss the Appellee Brief's points; and doesn't reply to the Appellee Brief's arguments. Rather, Appellants' response to the <u>***amicus***</u> motion remained focused on the proposed <u>***amicus***</u> brief—not the <u>***Appellee***</u> Brief.

A reply brief *<u>would</u>* cite an appellee brief. Indeed, a *<u>reply</u>* brief exists to *<u>reply</u>* to the *<u>appellee</u>* brief: "The appellant may file a brief in <u>***reply* to the *appellee's* brief**</u>." E.g., Fed. R. App. P. 28(c); Hewlett-Packard Co. v. Quanta Storage, Inc., 961 F.3d 731, 741 n.5 (5th Cir. 2020) ("The purpose of a reply brief is just that—to 'reply to the appellee's brief.'" (quoting FRAP 28(c)); Blaes v. Johnson & Johnson, 858 F.3d 508, 516 (8th Cir. 2017) ("[T]he purpose of a reply brief is to respond to the statement of facts and arguments of the appellee's brief.").

So, the instant Motion's position that Appellants' response to the amicus motion is really a reply brief is refuted by a review of Appellants' response itself: the response nowhere cites the Appellee Brief.

A motion response that nowhere cites, discusses, or replies to an appellee brief is simply not a reply brief—and definitionally so. See Fed. R. App. P. 28(c). The Motion is premised on this error. And, it is this deeply flawed Motion to Strike— *i.e.*, a motion that makes the basic error of conflating a motion response with a reply brief—that is presently pending before the Court.

\* \* \* \* \*

*First*, the governing standard for the Motion is unclear.

Appellee's Motion does not identify the rule or authority for which it seeks to strike Appellants' response. The Motion fails to identify the governing standard. Perhaps, Appellee is moving under the analogous rule of civil procedure that permits courts to strike matter that is "(1) []insufficient[]; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." E.g., Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973-974 (9th Cir. 2010) (discussing Fed. R. Civ. P. 12(f) motions to strike standards).

Yet, Appellants' response to the amicus motion is none of these. Appellants' response to the amicus motion is strictly focused on the amicus motion and amicus brief. Thus, it's pertinent and material *to the amicus motion*. 9th Cir. Dkt. 72.

Likewise, Appellee makes no suggestion that Appellants' response to the amicus motion is scandalous. 9th Cir. Dkt. 73. Nor does Appellee suggest it's insufficient. Id. Quite the contrary, Appellee's gripe seems to be that Appellants' discussion of the amicus brief's lacking relevance is *too sufficient*—*i.e.*, too thorough as a "16-page, 3,341-word brief[.]" 9th Cir. Dkt. 73 at 2.[3]

*Second*, Appellants' motion response is compliant.

This Court has stricken materials when they are filed overlength without the Court's authorization. E.g., CRST Van Expedited, Inc. v. Werner Enters., 479 F.3d 1099, 1104 n.4 (9th Cir. 2007) (striking Rule 28(j) letter for being beyond the 350-word limit).

Yet, Appellees' Motion itself *acknowledges* that Appellants' response to the amicus motion *is* compliant. Rule 29 instructs that a proposed amicus curiae bring a "**Motion for Leave to File.**" Fed. R. App. P. 29(a)(3). In turn, Rule 27 authorizes a motion response to contain up to "**5,200 words**;"[,] Fed. R. App. P. 27(d)(2)(A), or "**20 pages**[,] Fed. R. App. P. 27(d)(2)(B). So, when the Motion complains of a motion response that is a "**16-page, 3,341-word**" filing, 9th Cir. Dkt. 72 at 2, the Motion is tacitly admitting that Appellants' motion response is rule compliant.

---

[3] Notably, the Motion to Strike repeatedly and inaccurately calls Appellants' motion response a "brief"—even though it is not. E.g., 9th Cir. Dkt. 73 at 2 ("3,341-word *brief*"); 2 ("The *brief*").

7

In fact, Appellants' response to the amicus motion is nearly 2,000 words below the 5,200-word limit.

***Third***, and centrally, Appellants' motion response is plainly not a *sub silentio* reply brief.

A *reply* brief exists to *reply* to the *appellee* brief: "The appellant may file a brief in ***reply* to the *appellee's* brief**." E.g., Fed. R. App. P. 28(c); Hewlett-Packard Co. v. Quanta Storage, Inc., 961 F.3d 731, 741 n.5 (5th Cir. 2020) ("The purpose of a reply brief is just that—to 'reply to the appellee's brief.'" (quoting Fed. R. App. P. 28(c)); Blaes v. Johnson & Johnson, 858 F.3d 508, 516 (8th Cir. 2017) ("[T]he purpose of a reply brief is to respond to the statement of facts and arguments of the appellee's brief.").

So, although the Motion to Strike deploys heightened rhetoric that Appellants' motion response is truly a "reply brief on the merits," 9th Cir. Dkt. 73 at 2, this assertion is belied by the lack of citation to the Appellee Brief in Appellants' response to the amicus motion. There aren't any.

A motion response that doesn't function like a reply brief; that doesn't cite the appellee brief like a reply brief, and that doesn't engage the appellee brief like a reply brief simply isn't a reply brief. Rather, the motion response is exactly what it's styled as: a motion response.

*Fourth*, the Motion fails to appreciate that an extended of discussion of relevance is warranted in response to an amicus motion.

Appellate Rule 29(a)(3) expressly instructs an amicus motion to discuss "*why the matters asserted are relevant to the disposition of the case*." Fed. R. App. P. 29(a)(3). That's the discussion that the rules expressly instruct filers to discuss with respect to a motion for leave to submit a brief as amicus curiae—as well as to the response thereof.

Indeed, clarity about the relevance of an amicus brief is especially important because there is a Circuit split on how to construe amicus briefs. See 9th Cir. Dkt. 72 at 2-3 (discussing then-Judge Alito's and retired-Judge Posner's divergent approaches to amicus motions). As Appellants' response to the amicus brief itself detailed, then-Judge Alito and then-Judge Posner articulated different standards with respect to amicus briefs, such that clarity as to how this Court construes the requirements of Rule 29 would be helpful.

Given Rule 29(a)(3)'s relevance requirement and divergent views as to what it means, the Motion is simply incorrect to say that a response to an amicus motion is "not the appropriate place" for a discussion of the relevance of an amicus brief to an appeal.

*Fifth*, the other amici *did* engage algorithmic control.

9

The amicus brief of Michel Lavi discussed algorithmic control and its impact upon children and society. E.g., 9th Cir. Dkt. 49-2 at 5 ("Dr. Michal Lavi submits this brief to explain the practice of ***algorithmic*** recommendations and targeting, the risk such targeting causes and its harm, possible prevention measures that could be reasonably taken to prevent it."). The amicus brief of Cindy Ku did as well. E.g., 9th Cir. Dkt. 42-2 at 4 ("software and ***algorithms***"). Both are plainly relevant insofar as they discuss algorithmic control.

By contrast, Appellants consider the proposed amicus brief of little-to-no relevance because it does not engage issues of algorithmic control. Nonetheless, Appellants' response to the amicus motion identified ways that one could nonetheless find some relevance to the proposed amicus brief: by showing how algorithmic control provides a limiting principle and by showing how open these legal questions truly are. See 9th Cir. Dkt. 72 at 4 ("[T]he failure to cite or identify any cases on algorithmic control—or even algorithms at all—show[s] just how novel and how open these questions are.").

***Sixth***, Appellant's response to the amicus motion is not an attempt to evade reply-brief word limits, as Appellee argues. See 9th Cir. Dkt. 73 at 2 ("The brief [*sic*], however, is a transparent attempt to circumvent the word limit for Appellants' reply brief on the merits[.]").

Not so.

Again, and as discussed above, Appellants' response to the amicus motion does not even discuss or cite the Appellee Brief. 9th Cir. Dkt. 72 (nowhere citing or discussing the Answering Brief whatsoever). Rather, Appellants' response to the amicus motion does just what a response to a motion should do—namely, ***respond to the (amicus') motion***.

Indeed, the central point of Appellants' response to the amicus motion was that the proffered amicus brief ***didn't*** engage the merits:

> [T]he proposed amicus brief is of limited relevance because it doesn't engage the specific act giving rise to liability here: tortious algorithmic control. Indeed, it completely ignores the technological products (*i.e.*, algorithms) and tortious acts (*i.e.*, algorithmic control) giving rise to the claims here.

Dkt. 72 at 8.

So, although Appellee claims that Appellants' response is an attempt to add words to "Appellants' reply brief on the merits[,]" 9th Cir. Dkt. 73 at 2, it's hard to see how. Appellants' motion response *nowhere* engages or replies to the Appellee Brief—*as a reply brief would*. In fact, Appellants' response argues that the proposed amicus brief has *nothing* to do with the merits of this case. Thus, Appellants' motion response is plainly not a reply brief on the merits.

Nor does Appellants' response to the amicus motion add words to or recycle arguments from the Opening Brief filed months earlier.

A comparison demonstrates as much. Compare 9th Cir. Dkt. 72 (response to the amicus motion) with 9th Cir. Dkt. 31-1 (proffered overlength brief), 9th Cir. Dkt. 45 (brief as accepted).

It's true that Appellants' response to the amicus motion *does* discuss the central facts and legal claims of this case. See, e.g., 9th Cir. Dkt. 72 at 14 ("[A]lgorithmic control is the central tortious activity at issue here"); 15 ("quintessence"). Nonetheless, engaging the "relevance" of a proposed amicus brief naturally requires addressing the central facts and claims of the case. See Black's Law Dictionary (2d Ed.) (defining "Relevant" as "Applying to the matter in question[.]").

Yet, the mere fact that a response to amicus motion addresses "why the matters asserted are relevant" (as required by Federal Rule of Appellate Procedure 29(a)(3)) doesn't make it an improper discussion of the merits. Indeed, Appellee's *own* non-brief motions have discussed the legal issues on appeal and addressed pertinent caselaw. See, e.g., Dkt. 21 at 4 (arguing the issues that "Appellants have raised concern the straightforward application of Supreme Court and Ninth Circuit precedent[.]"); 5 (discussing this Court's decision CoreCivic, Inc. v. Candide Grp., LLC, 46 F.4th 1136, 1138 (9th Cir. 2022)).

There's simply nothing unusual about a motion or response to a motion discussing the legal issues on appeal.

Referencing the legal issues on appeal is especially apt to occur where, as in the case of an amicus motion, the governing legal standard expressly requires considering "why the matters asserted [in the amicus] are relevant to the disposition of the case." Fed. R. App. P. 29(a)(3) (requiring amicus motion to state its relevance to the disposition of the appeal).

For all these reasons, the Motion should be denied.

\* \* \* \* \*

Appellee's counsel proudly boast that their law firm is "able to deploy an army of trial lawyers capable of *waging war*."[4] In this regard, the instant Motion is on brand. Indeed, throughout this appeal, Appellee's counsel has done just that—waged a campaign through aggressive procedural filings aimed at avoiding the merits of this wrongful-death dispute pertaining to the deaths of a 15-year-old girl, Bella Herndon, and many other vulnerable children like her.

Frequently, when Bella's family has "sought relief from the court, defense counsel filed fierce oppositions, even accusing [] counsel of unethical conduct." See Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1263 (9th Cir. 2010) ("Such uncompromising behavior [...] **undermines the truth-seeking function** of our adversarial system.").

---

[4] https://www.mto.com/about-us (last accessed July 18, 2023).

For example, Appellee's counsel aggressively opposed extension requests on briefing. See, e.g., 9th Cir. Dkt. 16-1 at 5 ("Appellants' next *excuse* is that their lead counsel had a 'pre-planned' three-week *honeymoon*[.]"). But see 9th Cir. Dkt. 18 ("Granting Opposed Motion").

Notably, these fierce oppositions and motions have not been tit-for-tat. For example, in stark contrast to the opposition by Appellee to extension requests, Appellants' nonprofit counsel have *never* opposed *any* of Appellee's extension requests. See, e.g., Dkt. 55 ("**Unopposed** Motion to extend time to file Answering brief until 05/26/2023"); Dkt. 59 ("**Unopposed** Motion to extend time"). Even after Appellee's counsel repeatedly opposed extension requests, Appellants' counsel have assented to extensions.

That's because Appellant's nonprofit counsel take seriously their civic, professional, and vocational obligations to opposing counsel as members of the profession. Cf. Ahanchian, 624 F.3d at 1263 ("[A]ttorneys should not oppose reasonable requests for extensions of time brought by their adversaries." (citing Cal. Attorney Guidelines of Civility & Prof. § 6)).

Naturally, Appellee's counsel is free to conduct its case this way—to treat civil litigation as an opportunity to "wage war" against the surviving family of a deceased girl.

Appellants' counsel certainly cannot compel Appellee's counsel to act otherwise.

Yet, many jurists have expressed disapproval toward such "hardball" tactics by law firms. See, e.g., Marcangelo v. Boardwalk Regency, 47 F. 3d 88, 90 (3d Cir. 1995) ("We do not approve of the **hardball tactics** unfortunately used by some law firms today."); Ahanchian, 624 F.3d 1253, 1263 (9th Cir. 2010) (criticizing the use by some lawyers and law firms of "**hardball tactics designed to avoid resolution of the merits of this case**").

Certainly, counsel *can* engage in hardball tactics. Yet, it's worthwhile to see such tactics, including the instant Motion to Strike, for what it is: the latest in a series of aggressive filings and hardball tactics aimed at creating procedural sideshows that distract from the merits of this highly complex wrongful-death dispute involving the deaths of many children.

Appellee's Motion to Strike should be denied.

Date: July 18, 2023                    Respectfully submitted,

DIGITAL JUSTICE FOUNDATION

*/s/ Gregory Keenan*
Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, NY 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

*Attorney for The Estate of Isabella "Bella" Herndon, John Herndon, M.H.*, a minor, *T.H.*, a minor

## CERTIFICATE OF COMPLIANCE

This Response contains **3,158** words, excluding the portions ordinarily exempted from word counts.

This Response was prepared in Microsoft Word using Times New Roman 14-point font.

Date: July 18, 2023                    Respectfully submitted,

                                       */s/ Gregory Keenan*
                                       Gregory Keenan

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: July 18, 2023      Respectfully submitted,

              */s/ Gregory Keenan*
              Gregory Keenan